UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

-----------------------------------------------------------------X
COLUMBIA PICTURES INDUSTRIES, INC.,
DISNEY ENTERPRISES, INC., TWENTIETH
CENTURY FOX FILM CORPORATION,
UNIVERSAL CITY STUDIOS PRODUCTIONS
LLLP, and WARNER BROS. ENTERTAINMENT
INC.,

                    Plaintiffs,

            v.

DOES 1 - 10

                    Defendants.
-----------------------------------------------------------------X

8:04-CV-2697-T-17TBM

No. _____

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY TO LEARN THE IDENTITIES OF DOE DEFENDANTS

By this motion, Plaintiffs seek leave to take early discovery for the limited purpose of learning the true identities of the Doe Defendants in order to properly add them as named defendants this action and serve them with process. Defendants are responsible for massive theft of Plaintiffs' motion pictures and television programs over the Internet. Defendants' illicit activities are causing tremendous and irreparable harm to Plaintiffs, who are the leading producers of filmed entertainment in the world. Although Plaintiffs have identified the computer server and Internet website with which the Doe Defendants enable the infringement of Plaintiffs' valuable intellectual property, the Doe Defendants hide their identities, operating their server and website anonymously. To

cannot proceed in any fashion, and Plaintiffs cannot stop the rampant infringement being facilitated by Defendants. Plaintiffs therefore ask that the Court expedite consideration of this motion and grant Plaintiffs' motion.

## BACKGROUND

### The BitTorrent Network

BitTorrent is an Internet network that is among the most recent peer-to-peer ("p2p") networks. Like other p2p networks, it enables individuals to upload (distribute) or download (copy/reproduce), without authorization, countless copyrighted movies and television programs to or from any other Internet user worldwide. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 331 (S.D.N.Y.), *aff'd sub nom. Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) (describing a viral system, in which the number of infringing copies made available multiplies rapidly as each user copying a file also becomes a distributor of that file).

BitTorrent differs from other p2p networks in several respects, but perhaps its most salient is speed – BitTorrent allows much faster copying of large files than earlier p2p networks, such as Napster and Kazaa. For that reason, BitTorrent has become one of the preferred systems for illegally copying and distributing large copyrighted video files, such as movies and television programs. Currently, the BitTorrent network offers individuals around the world perfect digital copies of any movie they desire for free – including unauthorized copies of movies that have not yet been released in theaters. Declaration of Chad Tilbury ("Tilbury Decl.") ¶ 7.

Another significant distinction between BitTorrent and other p2p networks is BitTorrent's reliance on specialized websites called "torrent sites" to locate content, and on specialized servers called "trackers" to manage the uploading and downloading of files. Tilbury Decl. ¶ 8. In this case, Defendants operate both a torrent site and a tracker – linchpins of the network which allow users to find and download files and without which infringement would not be possible. Complaint ¶¶ 18-21.

To find a particular movie (or television program) on the BitTorrent network, a user must visit a torrent site, like the Defendants', and search for that movie from a list of available files. A torrent site effectively acts as a retail storefront that offers individual users specific files. Once the user finds the movie he or she wants, he or she simply clicks the file name, initiating the downloading process. The torrent site provides the user with a file called a "torrent" which corresponds to the particular movie requested. Once the torrent is downloaded, the torrent is used to connect the user's computer to a tracker (also operated by Defendants). The tracker functions as a back-end distribution center. When a user's computer connects to the tracker, the tracker organizes and connects the downloaders to the uploaders that have the desired movie so that users may download a new digital copy of the movie. Tilbury Decl. ¶ 8.

From the perspective of the user, this is seamless. All a BitTorrent user must do is click on the name of a movie on Defendants' torrent site and that movie will be downloaded onto the user's computer for free. A user of BitTorrent never needs to buy another DVD and can obtain even first-run movies still available only in theaters. Tilbury Decl. ¶ 7.

Defendants know full well that their business is based on massive copyright infringement. Indeed, the Defendants' website advertises the movies and television programs that are available for download, thus attracting users to their sites and facilitating the infringement. Tilbury Decl. ¶ 8. In most cases, they exercise editorial control over the material that they wish to make available using their sites, electing, for example, to provide only certain television programs or certain kinds of movies. Tilbury Decl. ¶ 8. Many also run these sites for commercial purposes, generating revenue through advertising on the websites, donations, or other sources. Tilbury Decl. ¶ 8.

Because the operators of torrent sites and trackers are well aware that the behavior they are engaged in is unlawful, they do not identify themselves by name on their website, and instead rely on aliases or user names. Tilbury Decl. at ¶ 9. Plaintiffs do not know – and cannot directly obtain – the identities of the individuals running these sites, nor do they know how many people may be behind them. There are, however, a number of entities that ought to be aware of the Defendants' true identities, including the Internet service provider ("ISP") that hosts the Defendants' site and vendors providing services to the Defendants.

While Defendants benefit from the massive infringement over the BitTorrent network, Plaintiffs suffer serious harm. Hundreds of thousands of copyrighted movies and television programs are reproduced and distributed on networks like BitTorrent each day. Tilbury Decl. ¶ 6. Plaintiffs – who own the copyrights in many of the movies and television shows being disseminated in this fashion – have not authorized this distribution and earn nothing from it.

### Defendants in this Case

Defendants in this case operate both a torrent site, bt.s0nicfreak.com, and a tracker which make available to users a large library of Plaintiffs' copyrighted works for free. On the s0nicfreak website, the Defendants index and sort torrent files that correspond to well-known copyrighted movies and television programs that are available for downloading. The torrent files direct a user's computer to connect to the Defendants' server and download the infringing content. Defendants have complete control over the material that is made available using their site, choosing, for example, to forbid the uploading and distribution of torrent files with password protection. As alleged in Plaintiffs' complaint, the s0nicfreak website offers access to hundreds of Plaintiffs' copyrighted movies and television shows without authorization. These movies and television shows include "50 First Dates," "I, Robot," "Harry Potter and the Prisoner of Azbakan," and "Family Guy" Complaint Exhibit A.

Defendants also make money from running their website. Defendants seek donations and have also integrated advertising throughout their website, to generate revenue when users see and click on their advertisers' links. The more copyrighted material that Defendants offer, the more users they attract. The more users they attract, the more revenue for Defendants.

As discussed above, Plaintiffs cannot know the identities of the Defendants who operate or benefit from s0nicfreak. They can, however, determine the Internet Protocol ("IP") address of the website and the tracker. As discussed in the Tilbury declaration, the IP address uniquely identifies a specific computer attached to the Internet, as well as the

ISP used by the website and tracker operators. ISPs maintain logs that match IP address (along with the date and time) with particular subscribers. Tilbury Decl. ¶ 13. Thus, once provided with the IP address, an ISP can quickly and easily identify the subscribers running the website and the tracker (i.e., the Defendants). In the case of s0nicfreak, the ISP at issue is Sago Networks. Complaint ¶ 10.

In addition, Defendants appear to have a financial relationship with PayPal, an Internet-based company that offers payment services for transactions over the Internet. Defendants' torrent site allows users to make donations through PayPal, which processes the donation and issues a payment to the Defendants. Thus, PayPal should have records that identify individuals who are financially profiting from the Defendants' website. Tilbury Decl. ¶ 20. Defendants also appear to have a financial relationship with Google, which offers a third-party Internet advertising broker service to place advertisements on the website. In order for the torrent site to accept advertisements powered by Google, a site's operator must provide Google with enough information for Google send payments based on revenue from the advertisement. Thus, Google should also have records that identify individuals who are financially profiting from the Defendants' website. Tillbury Decl. ¶¶ 14, 20.

This Lawsuit

Plaintiffs have already gathered substantial evidence of infringement by the Defendants. That evidence demonstrates that Defendants are liable under longstanding principles of secondary copyright liability because they knowingly induce, cause, and/or materially contribute to copyright infringement (contributory copyright infringement) and

7

they obtain a financial benefit from and have the right and ability to control such infringement (vicarious copyright liability). *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963).

Because Plaintiffs cannot know the identities of the Defendants, who chose to operate anonymously, Plaintiffs have no choice but to file suit against Doe Defendants and seek leave to take discovery to identify the Defendants so that this case can proceed. This motion seeks leave to subpoena Sago Networks, Google, and PayPal for the limited purpose of learning the Defendants' true identities and whereabouts. Concurrent with the filing of this lawsuit, Plaintiffs have notified Sago Networks, Google, and PayPal of its filing, and have requested that they each preserve records that may be responsive to Plaintiffs' discovery. In addition, Plaintiffs have requested that Sago Networks provide its customer with a letter from Plaintiffs advising them of this action.

If the Court grants this motion, Plaintiffs will serve subpoenas requesting information identifying those behind the s0nicfreak site within 15 calendar days. Sago Networks, Google, and PayPal will be able to notify each Defendant that the Plaintiffs are seeking their identities, and any Defendant that wishes to do so will be able to raise objections by filing a motion to quash in this Court before the return date of the subpoena. Once Plaintiffs learn the Defendants' true names, Plaintiffs will attempt to resolve the dispute without the need for further Court intervention. If that effort fails, Plaintiffs will then pursue this lawsuit.

8

## ARGUMENT

A single look at Defendants' website is all one needs to recognize that Defendants are facilitating and profiting from massive copyright infringement over the Internet. Defendants could put a stop to this, but have chosen to flout the law. Every day that such infringement continues, Plaintiff copyright owners suffer irreparable harm as a matter of law. Plaintiffs cannot, however, obtain any relief unless they are first able to identify the Defendants and bring them before this Court.

There is no dispute that a Doe lawsuit is a proper means of bringing suit against those who violate the law over the Internet (or elsewhere). Courts in this and other circuits routinely permit immediate discovery where plaintiffs cannot determine the identity of the defendants. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (prohibiting dismissal of unnamed defendants, because identity could be ascertained through discovery); *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (vacating dismissal because plaintiff was entitled to discovery to reveal defendant's identity); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (permitting joinder of Doe defendant, because identity could be obtained through discovery); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("Rather than dismissing the claim, the court should have ordered disclosure of the Office Doe's identity."); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants."); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (permitting party who "is ignorant of defendants' true identity . . . to obtain

their identity through limited discovery"); *United Parcel Serv. Of Am., Inc. v. John Does One Through Ten*, No. 03-1639, 2003 WL 21715365, at *1 (N.D. Ga. June 13, 2003); *see also Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 389 n.2 (1971) (noting, without discussion, use of unnamed defendants).

Indeed, in more than a hundred cases involving individuals uploading and downloading copyrighted movies and sound recordings, federal courts have authorized limited discovery virtually identical to that sought here, recognizing that absent such discovery, defendants would be able to continue to violate the law indefinitely. Tilbury Decl. ¶ 15. Moreover, courts in those cases have unanimously rejected efforts to quash subpoenas issued to ISPs because the plaintiffs' need to learn the identities of defendants far outweighs any legitimate interest of the defendants.[1]

Plaintiffs have met their burden of showing "good cause" for discovery in advance of a Rule 26(f) conference. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 481, 419 (D. Colo. 2003); *Entertainment Tech. Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440, at *4 (E.D. Pa. 2003) ("[A] district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances.") (quotations omitted); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (applying a good cause standard).

---

[1] As these cases show, expedited discovery is appropriate even where the defendant may be engaged in unlawful copying and dissemination of copyrighted material from a home computer for personal use.

First, good cause exists where, as here, the complaint alleges claims of infringement. *See Semitool*, 208 F.R.D. at 276; *Qwest Comm.*, 213 F.R.D. at 419 ("The good cause standard may be satisfied . . . where the moving party has asserted claims of infringement and unfair competition."); *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 CIV 3841, 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). This makes sense because such claims necessarily involve irreparable harm to the plaintiffs. 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 14.06[A], at 14-103 (2003); *see also Health Ins. Ass'n of Am. v. Novelli*, 211 F. Supp. 2d 23, 28 (D.D.C. 2002) ("A copyright holder [is] presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded.") (quotations and citations omitted); *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1034, 1042 (8th Cir. 2003); *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 66 (2d Cir. 1996).

Second, good cause exists here because there is a serious risk the information that Plaintiffs seek will be destroyed. Tilbury Decl. ¶ 21. ISPs typically retain user activity logs containing the information sought for only a limited period of time – sometimes for as little as weeks or even days – before erasing the data. If such information is destroyed, Plaintiffs will lose the opportunity to identify the Defendants who are directly involved in operating the tracker and torrent site. Tilbury Decl. ¶ 21. Accordingly, if Plaintiffs are to pursue their lawsuit to protect their copyrighted works, they must have swift access to the ISP's information. Where "physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation," good cause for expedited discovery exists. *See Qwest Comm.*, 213 F.R.D. at 419; *Pod-Ners, LLC v.*

*Northern Feed & Bean*, 204 F.R.D. 675, 676 (D. Conn. 2002) (allowing Plaintiff expedited discovery to inspect beans in defendant's possession because the beans might no longer be available for inspection if discovery proceeded in the normal course).

Third, the discovery that Plaintiffs seek in this case is thus critical to ensuring that those who operate and profit from the unlawful infringement in this case can be brought before the Court as soon as possible. Information from Sago Networks will likely identify the individuals or entities running the torrent site and trackers that are widely used to infringe copyrights. Information from Google and PayPal will likely identify the individuals or entitles who are profiting from the infringement. Each group should properly be made Defendants in this case. *See Knapp v. Americredit Fin. Servs., Inc.*, 204 F.R.D. 306, 308-09 (S.D. W. Va. 2001) (holding that where there are Doe Defendants who are alleged to be in a conspiracy with a named defendant, a court should grant expedited discovery because it "further[s] the goal of assuring that the necessary parties are joined and participating in this action at the earliest possible date").

Fourth, good cause exists because the narrowly tailored discovery requests do not exceed the minimum information required to advance this lawsuit and will not prejudice Defendants. *See Semitool*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."). The information sought is limited solely to identifying the Defendants. Plaintiffs (who continue to be harmed by Defendants' copyright infringement, Tilbury Decl. ¶ 17), cannot wait until after the Rule 26(f) conference. Indeed such a conference, ordinarily a prerequisite before propounding

discovery, would be fruitless since there are no known Defendants with whom to confer. Moreover, there is no prejudice to the Defendants, because Plaintiffs merely seek information to identify the Defendants and to serve them with process. As embodied in the proposed order accompanying this motion, Plaintiffs agree to use the information disclosed pursuant to their subpoenas only for the purpose of protecting their rights under the copyright laws.

Fifth, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward." *Semitool*, 208 F.R.D. at 277. This case cannot proceed without the limited, immediate discovery Plaintiffs seek because there is no other information Plaintiffs can obtain about Defendants without the requested discovery. As shown by the Complaint and the Declaration of Chad Tilbury, Plaintiffs already have developed a substantial case on the merits against each infringer. Plaintiffs' complaint alleges a *prima facie* claim for secondary copyright liability. Plaintiffs have alleged that Defendants have contributorily and vicariously infringed Plaintiffs' copyrights because their site provides access to dozens of copyrighted movies and television programs owned by, or exclusively licensed to, Plaintiffs. Plaintiffs have further alleged that virtually all of movies and television programs offered on the torrent site and tracked using the tracker have actually been reproduced (downloaded) and distributed (uploaded) to the public without permission or consent of the respective copyright holders. Absent limited, immediate discovery, Plaintiffs will be unable to obtain redress for any of this infringement.

## CONCLUSION

The Plaintiffs' Motion for Leave to Take Expedited Discovery should be granted.

Respectfully submitted,

*Karen L. Stetson*

Karen L. Stetson
FL Bar No. 742937
Broad and Cassel
201 S. Biscayne Blvd.
Suite 3000
Miami, FL 33131
Telephone: (305) 373-9423
Facsimile: (305) 995-6381

Donald B. Verrilli, Jr.
Steven B. Fabrizio
Matthew J. Oppenheim
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005
Phone: (202) 639-6000
Fax: (202) 639-6066

*Attorneys for Plaintiffs*

Dated: December 14, 2004